Norman E. Siegel, MO Bar #44378
(*pro hac vice* forthcoming)
*siegel@stuevesiegel.com*
Barrett J. Vahle, MO Bar #56674
(*pro hac vice* forthcoming)
*vahle@stuevesiegel.com*
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Fax: (816) 714-7101

Jason S. Hartley, CA Bar No. 192514
*hartley@stuevesiegel.com*
STUEVE SIEGEL HANSON LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Phone: (619) 400-5822
Fax: (619) 400-5832

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD O'KELLY, on behalf of himself and all others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| FACEBOOK, INC.; and CAMBRIDGE ANALYTICA, LLC, | |
| Defendants. | |

Plaintiff Howard O'Kelly ("Plaintiff"), individually and on behalf of the similarly situated persons defined below, alleges the following against Defendants Facebook, Inc. ("Facebook") and Cambridge Analytica, LLC ("Cambridge Analytica"). Plaintiff makes these allegations upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE ACTION

1.    Plaintiff brings this class action to redress Facebook's failure to protect and safeguard the private information of nearly 50 million of its users, allowing that information to be pilfered by a political consulting firm, Cambridge Analytica, in an attempt to manipulate Facebook users for political ends.

2.    Facebook operates a social networking website that allows people to communicate with their family, friends, and coworkers. Facebook develops technologies that facilitate the sharing of information, photographs, website links, and videos. Facebook users have the ability to share and restrict information based on their own specified criteria. By the end of 2017, Facebook had more than 2.1 billion monthly active users.

3.    Facebook promises its users, through its terms and conditions, that it will protect the privacy of user's data and information that users entrust to Facebook's website ("Personal Information") and further represents that it will not disclose to third parties Personal Information without the user's permission and notice of such disclosure.

4.    On March 17, 2018, both the *New York Times* and *The Guardian* reported on the political consulting firm Cambridge Analytica's use of Personal Information obtained from Facebook without permission from its owners, and under the false pretense of claiming to be collecting and using it for academic

CLASS ACTION COMPLAINT

purposes. The reports revealed that Cambridge Analytica used the data of 50 million people obtained from Facebook without proper disclosures or permission.

5.     Facebook violated its contractual obligations and tort duties to secure the private information of its users. Its breaches of these duties and the reasonable expectations of its users have allowed the Personal Information of millions to be compromised. Facebook has admitted it violated these obligations, and that its actions in this matter were a serious breach of trust. Cambridge Analytica improperly collected and used for its own profit the Personal Information of millions of Facebook users, without permission and under false pretenses.

6.     Plaintiff brings this suit to protect his privacy interests and those of millions of similarly situated Facebook users, privacy interests that were brazenly violated by both Defendants. Accordingly, Plaintiff, on behalf of himself and all others similarly situated, asserts claims for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), fraudulent misrepresentation, negligence, breach of contract, breach of the duty of good faith and fair dealing, and invasion of privacy.

## **PARTIES**

7.     Plaintiff Howard O'Kelly is an individual and a resident of Burbank, California who has been a Facebook user since September, 2009. On information and belief, Plaintiff's private information was exposed to Cambridge Analytica without his knowledge or consent. During the 2016 Presidential election, Plaintiff frequently viewed political ads while using Facebook.

8.     Facebook is incorporated in Delaware, and the Company's principal executive offices are located at 1601 Willow Road, Menlo Park, California 94025. Facebook can be served through its registered agent, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 95833.

9.     Defendant Cambridge Analytica LLC is a Delaware limited liability company with offices in London, New York, and Washington, D.C. Cambridge Analytica does business throughout the United States, including in this District.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states different from a Defendant.

11.     This Court has personal jurisdiction over Defendant Facebook because it is headquartered here and registered to conduct business in California. This Court has personal jurisdiction over Defendant Cambridge Analytica because it conducts business here, including participating the events that gave rise to this action in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants reside here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District. In addition, Facebook's terms of service contain a forum selection clause requiring any suits against it to be filed in the Northern District of California or a state court located in San Mateo County.

## FACTUAL BACKGROUND

13.     Plaintiff brings this class action against Facebook for exposing the private information of 50 million of its users to the political consulting firm Cambridge Analytica without their permission or consent.

14.     Facebook has a history of permitting the private information of its users to be mined by third parties for a profit. Sandy Parakilas, a "former Facebook platforms operations manager for policing data breaches by third party software developers between 2011 and 2012," stated that as many as hundreds of millions of

Facebook users are likely to have had their private information harvested by companies that exploited the same terms as the firm that collected data and passed it on to Cambridge Analytica."[1]

15.    Parakilas stated that he warned senior executives at the company that its lax approach to data protection risked a major breach: "[Parakila's] concerns were that all of the data that left Facebook servers to developers could not be monitored by Facebook, so [Facebook] had no idea what developers were doing with the data" and that the company did not use enforcement mechanisms, including audits of external developers, to ensure data was not being misused.[2]

16.    Incredibly, Facebook's "trust model" was rife with security vulnerabilities and a near total abnegation of its responsibility to audit its own rules limiting use of Facebook data by third parties. Or, in Parakilas' own words, "[Facebook] felt that it was better not to know."[3]

17.    On May 16, 2017, Reuters reported that France's National Commission on Informatics and Liberty ("CNIL") had fined Facebook €150,000 – the maximum amount then allowed within the CNIL's authority – for "failing to prevent its users' data being accessed by advertisers." The article stated that the fine was said to be "part of a wider European investigation also being carried out in Belgium, the Netherlands, Spain and Germany into some of Facebook's practices."[4]

18.    More recently Facebook permitted a company tasked with fulfilling the political aspirations of then presidential candidate Donald Trump to access

---

[1]   *See*   <https://www.theguardian.com/news/2018/mar/20/facebook-data-cambridge-analytica-sandy-parakilas> (last visited March 26, 2018).

[2] *Id.*

[3] *Id.*

[4]   *See*   <https://www.reuters.com/article/us-facebook-france/facebook-fined-150000-euros-by-french-data-watchdog-idUSKCN18C10C > (last visited March 24, 2018).

users' data without their permission or knowledge. Defendant Cambridge Analytica is a political consulting firm created by Stephen Bannon with funding from the conservative billionaire donors Rebekah and Robert Mercer. Bannon became the vice president of Cambridge Analytica. The company's co-founder Christopher Wylie stated it was the company's mission "to fight a culture war in America."[5] During the 2016 election, Bannon reached out to the Trump campaign to sell the firm's services.

19.   The Strategic Communication Laboratories Group ("SCL") is a British public relations and messaging firm that does all the work for Cambridge Analytica. It also does work for governments, politicians, and militaries worldwide. "SCL tends to describe its capabilities in grandiose and somewhat unsettling language − the company has touted its expertise at 'psychological warfare' and 'influence operations.' It's long claimed that its sophisticated understanding of human psychology helps it target and persuade people of its clients' preferred message."[6] Defendant Cambridge Analytica is in essence a shell for the SCL Group.

20.   Cambridge Analytica gets its data for its consulting business from a variety of sources. For instance, according to the Wall Street Journal, Cambridge Analytica's CEO Alexander Nix contacted WikiLeaks founder Julian Assange to acquire information about the emails that were hacked from the Democratic National Committee's servers.[7]

21.   Facebook offers a number of technology tools for software developers, and one of the most popular is Facebook Login, which lets people

---

[5]   *See* <https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nixbannon-trump> (last visited March 23, 2018).
[6]   *See* <https://www.vox.com/policy-and-politics/2018/3/23/17151916/facebook-cambridge-analytica-trump-diagram> (last visited March 23, 2018).
[7]   *See* <https://www.wsj.com/articles/wikileaks-assange-says-he-rejected-overture-from-trump-linked-group-1508961298> (last visited March 23, 2018).

simply log in to a website or app using their Facebook account instead of creating new credentials. People use it because it is easy − usually one or two taps − and eliminates the need for people to remember numerous unique username and password combinations.

22.   When people use Facebook Login, however, they grant the application's developer a range of information from their Facebook profile − things like their name, location, email or friends list.

23.   This is what happened in 2015, when a Russian-American Cambridge University professor named Dr. Aleksandr Kogan created an application called "thisisyourdigitallife" that utilized Facebook's login feature. Billed as a "research app used by psychologists" and designed by a Cambridge academic, it promised to help users better understand their own personalities. Some 270,000 people used Facebook Login to create accounts and thus opted in to share personal profile data with Kogan. But the app not only collected data from people who took the quiz, it also exposed a loophole in Facebook's Application Programming Interface that allowed it to collect data from the Facebook friends of the quiz takers as well − more than 50 million other people who had not consented to share their information with the quiz-app.

24.   Dr. Kogan then shared the agglomeration of furtively-acquired Facebook data with Cambridge Analytica, who used that data to build a massive targeted marketing database based on each user's individual likes and interests. Its research provided a treasure trove of Facebook "likes", allowing it to match individuals' traits with existing voter datasets, such as who owned a gun. These profiles "contained enough information, including places of residence, that

Cambridge Analytica could match users to other records and build psychographic profiles."[8]

25.     Using this personality profiling methodology, the company offered its profiling system to the Trump campaign, as well as dozens of other right-wing political campaigns, so that potential voters could be targeted with precision. For instance, in the lead-up to the presidential primaries, Ted Cruz's presidential campaign paid at least $750,000 to Cambridge Analytica for its behavioral micro-targeting research. The company has also received millions of dollars from conservative Super Pacs.[9]

26.     In effect, Cambridge Analytica was mounting a campaign of psychological warfare on millions of unknowing victims, without their knowledge or consent. Indeed, of the 50 million Facebook users victimized by this scheme, "only about 270,000 users – those who had participated in the [mydigitallife] survey"[10] – had even consented to having their data harvested, and then only for research purposes, and without any authorization to having their data used to promote Cambridge Analytica's political goal to engage in cultural warfare. Indeed, Mr. Wylie stated that "the Facebook data . . . was 'the saving grace' that let his team deliver the models it had promised the Mercers."[11]

27.     On March 17, 2018, The New York Times published an investigative report entitled "How Trump Consultants Exploited the Facebook Data of Millions," revealing that Cambridge Analytica used the data of 50 million people

---

[8]     *See*          <https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html> (last visited March 23, 2018).

[9] *See* <https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data> (last visited March 23, 2018).

[10]     *See*          <https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html> (last visited March 24, 2018).

[11] *Id.*

obtained from Facebook without making proper disclosures or obtaining permission. The report further stated in relevant part:

[T]he firm harvested private information from the Facebook profiles of more than 50 million users without their permission, according to former Cambridge employees, associates and documents, making it one of the largest data leaks in the social network's history. The breach allowed the company to exploit the private social media activity of a huge swath of the American electorate, developing techniques that underpinned its work on President Trump's campaign in 2016.

An examination by The New York Times and The Observer of London reveals how Cambridge Analytica's drive to bring to market a potentially powerful new weapon put the firm — and wealthy conservative investors seeking to reshape politics — under scrutiny from investigators and lawmakers on both sides of the Atlantic.

\*\*\*

But the full scale of the data leak involving Americans has not been previously disclosed — and Facebook, until now, has not acknowledged it. Interviews with a half-dozen former employees and contractors, and a review of the firm's emails and documents, have revealed that Cambridge not only relied on the private Facebook data but still possesses most or all of the trove.

Cambridge paid to acquire the personal information through an outside researcher who, Facebook says, claimed to be collecting it for academic purposes.

During a week of inquiries from The Times, Facebook downplayed the scope of the leak and questioned whether any of the data still remained out of its control. But on Friday, the company posted a statement expressing alarm and promising to take action.

\*\*\*

In Britain, Cambridge Analytica is facing intertwined investigations by Parliament and government regulators into allegations that it performed illegal work on the "Brexit" campaign. The country has strict privacy laws, and its information commissioner announced on Saturday that she was looking into whether the Facebook data was "illegally acquired and used."

1

***

2    The documents also raise new questions about Facebook, which is already
3    grappling with intense criticism over the spread of Russian propaganda and fake
4    news. The data Cambridge collected from profiles, a portion of which was
5    viewed by The Times, included details on users' identities, friend networks and
     "likes." Only a tiny fraction of the users had agreed to release their information
6    to a third party.

7    "Protecting people's information is at the heart of everything we do," Mr.
8    [Paul] Grewal [Deputy General Counsel at Facebook] said. "No systems were
     infiltrated, and no passwords or sensitive pieces of information were stolen or
9    hacked."

10   Still, he added, "it's a serious abuse of our rules."

11                                        ***

12   Mr. Grewal, the Facebook deputy general counsel, said in a statement that both
     Dr. Kogan and "SCL Group and Cambridge Analytica certified to us that they
13   destroyed the data in question."

14   But copies of the data still remain beyond Facebook's control. The Times
15   viewed a set of raw data from the profiles Cambridge Analytica obtained.[12]

16       28.    Cambridge Analytica initially denied it had obtained or used

17   Facebook data. Just recently, however, the company acknowledged that it had

18   acquired the data, but said it deleted the information as soon as it learned of the

19   problem two years ago. But that has turned out to be false as well. The New York

20   Times reports that it was recently able to view a set of raw data from the profiles

21   Cambridge Analytica obtained.[13]

22       29.    Facebook's claim that "[p]rotecting people's information is at the

23   heart of everything we do,"[14] is a far cry from the truth. In fact, Facebook has

24

25   [12]     See     <https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-
     campaign.html> (last visited March 24, 2018).
26   [13]     See   <https://www.nytimes.com/2018/03/19/technology/facebook-cambridge-analytica-
     explained.html> (last visited March 23, 2018).
27   [14]     See     https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-
     campaign.html
28

known about this data-siphon for two years, but did little or nothing to protect its users and it is only now acknowledging its mistake.[15] The Company issued a statement on March 16, 2018 acknowledging it learned that Dr. Kogan's research had been turned over to Cambridge Analytica in 2015. It contends that it removed Dr. Kogan's app from the site at that time and demanded and received notification that the data had been destroyed. Facebook also acknowledges, however, that it has now learned that not all the data was in fact deleted.[16]

30.    Facebook claimed that it was not breached, and that its technology worked exactly how Facebook built it to work, but that Cambridge Analytica violated the Company's terms of service. But Facebook has since changed those terms of service to cut down on the information third parties can collect, admitting that its prior terms of service were not sufficient.[17]

31.    On March 21, 2018, Facebook Chairman and CEO, Mark Zuckerberg, gave an interview to CNN. He recognized the critical importance of keeping Facebook users' data secure by noting, "what we've learned over time very clearly is that the most important thing always is making sure that people's data is locked down." In response to questions about the Cambridge Analytica use of users' data without their permission or knowledge, Mr. Zuckerberg said "[T]his was a major breach of trust and I'm really sorry that this happened."[18] He further acknowledged that Facebook made a mistake by not verifying Cambridge Analytica had destroyed the users' data it improperly collected: "We should not have trusted the

---

[15] *See* <https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data> (last visited March 23, 2018).

[16]    *See*    <https://www.nytimes.com/2018/03/19/technology/facebook-cambridge-analytica-explained.html> (last visited March 23, 2018).

[17]    *See*    <https://www.recode.net/2018/3/17/17134072/facebook-cambridge-analytica-trump-explained-user-data> (last visited March 23, 2018).

[18]    *See*    <http://money.cnn.com/2018/03/21/technology/mark-zuckerberg-cnn-interview-transcript/index.html> (last visited March 24, 2018).

certification that [Cambridge Analytica] gave us. And we're not gonna make that mistake again."

32.     Even now, Facebook does not know the full extent of its breaches of trust. According to Mr. Zuckerberg, "Even if you solve the problem going forward, there's still this issue of: Are there other Cambridge Analyticas out there, or other Kogans who, when the platform worked a certain way in the past, were there apps which could have gotten access to more information, and potentially sold it without us knowing, or done something that violated people's trust."[19]

33.     At all relevant times, Facebook has maintained a Data Use Policy on its website. At all relevant times, the Data Use Policy advised Facebook users, in part:

> Granting us permission to use your information not only allows us to provide Facebook as it exists today, but it also allows us to provide you with innovative features and services we develop in the future that use the information we receive about you in new ways.

> While you are allowing us to use the information we receive about you, you always own all of your information. ***Your trust is important to us, which is why we don't share information we receive about you with others unless we have:***

> ☐ ***received your permission***

> ☐ ***given you notice****, such as by telling you about it in this policy; or*

> ☐ removed your name and any other personally identifying information from it.[20]

34.     On March 20, 2018, Bloomberg published an article entitled "FTC Probing Facebook For Use of Personal Data, Source Says," disclosing that the U.S. Federal Trade Commission is "probing whether Facebook violated terms of a 2011

---

[19]     *See*     <https://www.nytimes.com/2018/03/21/technology/mark-zuckerberg-q-and-a.html> (last visited March 26, 2018).

[20] *See* https://www.facebook.com/full_data_use_policy (emphasis added).

consent decree of its handling of user data that was transferred to Cambridge Analytica without [user] knowledge." Under the 2011 settlement with the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a settlement of federal charges that it deceived consumers and forced them to share more personal information than they intended." The article further stated that "if the FTC finds Facebook violated terms of the consent decree, it has the power to fine the company more than $40,000 a day per violation."[21] On March 26, 2018, the FTC confirmed that it is investigating the company's privacy practices.

35.    Facebook's failure to properly protect their users' Personal Information, and Cambridge Analytica's improper collection and use of that Personal Information, has caused those users actual harm for which they are entitled to compensation, including:

        a.    theft of their personal information and exploitation thereof;

        b.    loss of the value of their personal information;

        c.    loss of privacy;

        d.    deprivation of rights they possess under California law, including the California Business and Professions Code § 17200, *et seq.*

## CLASS ACTION ALLEGATIONS

36.    Plaintiff seeks relief in his individual capacity and as a representative of all others who are similarly situated. In accordance with Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following class (the "Class"):

All persons who registered for Facebook accounts in the United States and whose personal information was obtained from Facebook by Cambridge Analytica without authorization or in excess of authorization.

---

[21] *See* <https://www.bloomberg.com/news/articles/2018-03-20/ftc-said-to-be-probing-facebook-for-use-of-personal-data> (last visited March 24, 2018).

37.     Excluded from the Class are Defendants, including any entity in which any Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by any Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

38.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably believes that there are approximately 50 million Class members. The identities and addresses of Class members can be determined through documents maintained by Defendant Facebook and/or Defendant Cambridge Analytica.

39.     <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

     i.     Whether Facebook represented that it would safeguard Plaintiff's and Class members' Personal Information and not disclose it without consent;

     ii.     Whether Facebook was aware of Cambridge Analytica's improper collection of Plaintiff's and Class members' Personal Information;

     iii.     Whether Facebook owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

     iv.     Whether Facebook breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

v.      Whether Defendants' conduct violated Cal. Civ. Code § 1750, *et seq.*;

vi.      Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200, *et seq.*;

vii.      Whether Defendants' conduct violated section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, *et seq.*,

viii.      Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution;

ix.      Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

40.      <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other Class member, was misused and/or disclosed without permission by Facebook to Cambridge Analytica.

41.      <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating privacy-related class actions.

42.      <u>Superiority</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

43.     Damages for any individual Class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

44.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendants have acted or have refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I

### Violation of California's Unfair Competition Law ("UCL") – Unlawful Business Practice

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

### (Against Facebook and Cambridge Analytica)

45.     Plaintiff incorporates the substantive allegations above as if fully set forth herein.

46.     By reason of the conduct alleged herein, Defendants engaged in unlawful practices within the meaning of the UCL. The conduct alleged herein is a "business practice" within the meaning of the UCL.

47.     Facebook represented that it would not disclose users' Personal Information without consent and/or notice. It also required application developers, like Cambridge Analytica, to obtain and utilize users' Personal Information in specified, limited ways.

48.     Facebook failed to abide by these representations. Facebook did not prevent improper disclosure of Plaintiff's and the Class's Personal Information.

49.     Cambridge Analytica obtained Plaintiff's and the Class's Personal Information either wholly without authorization or in excess of any authorization it—or its agents—may have obtained.

50.     Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Cal. Civ. Code § 1798.81.5(b), Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and Cal. Bus. & Prof. Code § 22576 (as a result of Facebook failing to comply with its own posted policies).

51.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendants' unlawful business practices. In particular, Plaintiff's and Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the information is of tangible value.

52.     As a result of Defendants' unlawful business practices, Plaintiff and the class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## COUNT II

### Violation of California's Unfair Competition Law ("UCL") – Unfair Business Practice

### (Cal. Bus. & Prof. Code § 17200, *et seq*.)

### (Against Facebook and Cambridge Analytica)

53.     Plaintiff incorporates the substantive allegations above as if fully set forth herein.

54.     By reason of the conduct alleged herein, Defendants engaged in unfair "business practices" within the meaning of the UCL.

55.     Facebook stored the Personal Information of Plaintiff and members of the Class in its electronic and consumer information databases. Facebook represented to Plaintiff and members of the Class that their Personal Information would remain private. Facebook engaged in unfair acts and business practices by representing that it would not disclose this Personal Information without

authorization. Cambridge Analytica engaged in unfair acts and business practices by furtively obtaining and misusing that Personal Information without authorization or in excess of any authorization.

56.     Plaintiff and the Class members suffered injury in fact and lost money or property as the result of Defendants' unfair business practices. In particular, Plaintiff and Class members' Personal Information was taken and is in the hands of those who will use it for their own advantage, or is being sold for value, making it clear that the stolen information is of tangible value.

57.     As a result of Defendants' unfair business practices, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## COUNT III

### Violation of California's Unfair Competition Law ("UCL") – Fraudulent Business Practice

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

### (Against Facebook)

58.     Plaintiff incorporates the substantive allegations above as if fully set forth herein.

59.     By reason of the conduct alleged herein, Defendants engaged in fraudulent "business practices" within the meaning of the UCL.

60.     Facebook stored the Personal Information of Plaintiff and members of the Class in its electronic and consumer information databases. Facebook falsely and knowingly represented to Plaintiff and members of the Class that their Personal Information would remain private. Facebook engaged in fraudulent business practices by representing that they would not disclose this Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

61.    Facebook's statements that it would maintain the confidentiality of Plaintiff's and the Class's private information was false because Facebook knowingly and intentionally provided that information to Cambridge Analytica, which used it for its own advantage or for commercial profit, without any permission or sufficient permission from the users. Plaintiff and the Class members suffered injury in fact and lost money or property as the proximate result of Defendant Facebook's unfair business practices. In particular, Plaintiff and Class members' Personal Information was taken and is in the hands of those who will and did use it for their own advantage, or was and is being sold for value, making it clear that the stolen information has tangible value.

62.    Plaintiff and the Class justifiably relied on the representations Facebook made in its publicly available privacy policy and elsewhere that it would not "share information we receive about you with others unless we have: received your permission [and] given you notice . . . ."

63.    As a result of Defendant's fraudulent business practices violations of the UCL, Plaintiff and the Class are entitled to restitution, disgorgement of wrongfully obtained profits and injunctive relief.

## COUNT IV

### Fraudulent Misrepresentation

### (Against Facebook)

64.    Plaintiff incorporates the substantive allegations above as if fully set forth herein.

65.    Plaintiff and members of the Class are entitled to a measure of damages for common law fraud under the California Civil Code for the fraud described herein.

66.    Facebook stored the Personal Information of Plaintiff and members of the Class in its electronic and consumer information databases. Defendant falsely

and knowingly represented to Plaintiff and members of the Class that their Personal Information would remain private. Defendant fraudulently represented that it would not disclose this Personal Information without authorization, and/or by obtaining that Personal Information without authorization.

67.     Facebook's statements that it would maintain the confidentiality of Plaintiff's and the Class's Personal Information was false because Facebook knowingly and intentionally provided that information to Cambridge Analytica, which used it for its own advantage or for commercial profit, without either any permission or sufficient permission from the users. Facebook knew that it did not have users' permission to disclose Personal Information to third parties because Facebook did not attempt in any way to obtain permission from the 50 million users whose Personal Information was disclosed by Facebook to Cambridge Analytica. Plaintiff and the Class members suffered injury in fact and lost money or property as the proximate result of Defendant's fraudulent misrepresentation. In particular, Plaintiff and Class members Personal Information was taken and is in the hands of those who will and did use it for their own advantage, or was and is being sold for value, making it clear that the stolen information has tangible value.

68.     Plaintiff and the Class justifiably relied on the representations Facebook made in its publicly available privacy policy and elsewhere that it would not "share information we receive about you with others unless we have: received your permission [and] given you notice . . . ."

69.     As described with specificity above, Defendant knew the falsity of its representations, and they were made with the intent to deceive Plaintiff and members of the Class into supplying Facebook with private confidential Personal Information. Facebook's representations regarding the maintenance of user confidentiality and privacy were material to Plaintiff's and Class members' decision to provide Facebook with the Personal Information Facebook

subsequently disclosed to Cambridge Analytica. Plaintiff and members of the Class justifiably relied upon the privacy statements and representations of Defendant.

70.     Plaintiff and members of the Class suffered harm as a proximate result of Defendant's fraudulent acts.

71.     As a result of Defendant's fraudulent misrepresentations, Plaintiff and the Class are entitled to general damages, special damages in an amount according to proof, punitive damages, reasonable attorneys' fees and costs, and any other relief that the Court deems proper or available for common law fraud, and injunctive relief.

## COUNT V

### Negligence

### (Against Facebook)

72.     Plaintiff incorporates the substantive allegations above as if fully set forth herein.

73.     Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in obtaining and protecting their Personal Information, and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties.

74.     Defendant knew that the Personal Information of Plaintiff and the Class was personal and sensitive information that is valuable.

75.     By being entrusted by Plaintiff and the Class to safeguard their Personal Information, Facebook had a special relationship with Plaintiff and the Class. Plaintiff and the Class signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect it, and would inform Plaintiff and the Class of any breaches or other security concerns that might call for action by Plaintiff and the Class. Facebook failed to do so, and in a breach of its duty of care allowed

20

Cambridge Analytica to without notice or permission obtain Plaintiff's and Class members' Personal Information.

76. Defendant breached its duties by failing to adopt, implement, and maintain adequate security measures to safeguard the Personal Information, and by allowing access to that Personal Information without authorization.

77. Facebook also breached its duty to timely disclose that Plaintiff's and the other Class members' Personal Information had been, or was reasonably believed to have been, improperly obtained.

78. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their Personal Information would not have been improperly disclosed to Cambridge Analytica. Defendant's negligence was a direct and legal cause of the theft of the Personal Information of Plaintiff and the Class and all resulting damages.

79. The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class members' Personal Information.

## COUNT VI

### Breach of Contract

### (Against Facebook)

80. Plaintiff incorporates the substantive allegations above as if fully set forth herein.

81. Defendant entered into a contract with Plaintiff and Class members, which includes terms covering privacy and limiting the use and sharing of Plaintiff's and Class members' Personal Information.

82.     Plaintiff and Class members bargained for an adequate level of security and reasonable care with respect to the use, storage, and sharing of their Personal Information.

83.     Plaintiff and Class members performed their duties under the contract and all the conditions required for Facebook's performance had occurred.

84.     Defendant violated the terms of the contract by sharing Plaintiff's and Class members' Personal Information with Cambridge Analytica for unauthorized purposes, without first obtaining Plaintiff's and Class members' consent or providing them notice of such disclosure.

85.     Defendant violated the terms of the contract by failing to take appropriate measures to protect Plaintiff's and Class members' Personal Information in accordance with Facebook's promises and representations.

86.     Plaintiff and Class members suffered actual damages which include but are not limited to lost benefit of their bargain with Defendant; exposure to a heightened, imminent risk of fraud; loss of the value of their Personal Information; and other financial harm.

## COUNT VII

### Breach of Covenant of Good Faith and Fair Dealing

### (Against Facebook)

87.     Plaintiff incorporates the substantive allegations above as if fully set forth herein.

88.     In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

89.     Facebook violated the duty to act fairly and in good faith. It entered into a contract with Plaintiff and Class members, which includes terms covering privacy and limiting the use and sharing of Plaintiff's and Class members' Personal Information.

90.     Plaintiff and Class members bargained for an adequate level of security and reasonable care with respect to the use, storage, and sharing of their Personal Information.

91.     Plaintiff and Class members performed their duties under the contract and all the conditions required for Facebook's performance had occurred.

92.     Defendant violated the terms of the contract by knowingly and intentionally sharing Plaintiff's and Class members' Personal Information with Cambridge Analytica for unauthorized purposes, without first obtaining Plaintiff's and Class members' consent or providing them notice of such disclosure.

93.     Defendant unfairly interfered with Plaintiff's and the Class's right to receive the benefit of the contract by failing to take appropriate measures to protect Plaintiff's and Class members' Personal Information in accordance with Facebook's promises and representations.

94.     Plaintiff and Class members suffered actual damages, which include but are not limited to lost benefit of their bargain with Defendant; exposure to a heightened, imminent risk of fraud; loss of the value of their Personal Information; and other financial harm.

## COUNT VIII

### Invasion of Privacy

### (Against Facebook and Cambridge Analytica)

95.     Plaintiff incorporates the substantive allegations above as if fully set forth herein.

96.     Article 1, Section 1 of the California Constitution expressly provides a right to privacy. This right is enforced through the intrusion tort of invasion of privacy.

97.     Facebook's terms of service provide that its users' Personal Information would not be released to third parties without permission and notice.

98.     Facebook's users reasonably believed that they could communicate with their families and friends through Facebook without the information being released to third parties without permission or notice.

99.     Plaintiff and the Class members have an interest in preventing the unauthorized disclosure and/or misuse of their Personal Information and in conducting their personal activities without intrusion or interference. This includes the right to not have their Personal Information stolen and used against them in Cambridge Analytica's psychological and cultural warfare.

100.    Defendants intentionally intruded on Plaintiffs' and Class members' private place, conversation, matter, seclusion, or solitude, without consent.

101.    Defendants' intrusive conduct was and is highly objectionable to a reasonable person and constitutes an egregious intrusion on Plaintiff's and Class member's rights to privacy.

102.    Plaintiff and Class members were harmed by Facebook's and Cambridge Analytica's invasion of their privacy rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter a Judgment:

(a)     Certifying the Class and appointing Plaintiff as Class Representative;

(b)     Finding that Defendants' conduct was negligent, deceptive, unfair, unlawful, and fraudulent as alleged herein;

(c)     Enjoining Defendants from engaging in further negligent, deceptive, unfair, unlawful, and fraudulent business practices alleged herein;

(d)     Finding that Defendant Facebook breached its contract with and duty of good faith and fair dealing owed to Plaintiff and Class members.

(e)     Awarding Plaintiff and the Class members nominal, actual, compensatory, consequential, and punitive damages;

(f)     Awarding Plaintiff and the Class members statutory damages and penalties, as allowed by law;

(g)     Awarding Plaintiff and the Class members restitution and disgorgement;

(h)     Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

(i)     Awarding Plaintiff and the Class members reasonable attorneys' fees costs and expenses, and;

(j)     Granting such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.

Dated: March 28, 2018                  Respectfully submitted,

                                        */s/Jason S. Hartley*
                                        Jason S. Hartley
                                        STUEVE SIEGEL HANSON LLP
                                        550 West C Street, Suite 1750
                                        San Diego, California 92101
                                        Phone: (619) 400-5822
                                        Fax: (619) 400-5832
                                        *hartley@stuevesiegel.com*

                                        Norman E. Siegel
                                        STUEVE SIEGEL HANSON LLP
                                        460 Nichols Road, Suite 200
                                        Kansas City, Missouri 64112
                                        Phone: (816) 714-7100
                                        Fax: (816) 714-7101
                                        *siegel@stuevesiegel.com*
                                        *vahle@stuevesiegel.com*

                                        **Counsel for Plaintiff**

CLASS ACTION COMPLAINT